**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

ARIEL BERMUDEZ,

        Plaintiff,

v.

SHARLENE SNOWLING, et al.,

        Defendants.

Civil Action No. 18-3622 (MAS) (TJB)

**OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendants' motion seeking summary judgment in this prisoner civil rights matter. (ECF No. 70.) Plaintiff filed a response to the motion (ECF No. 73), to which Respondents replied. (ECF No. 76.) For the following reasons, Defendants' motion is granted in part and denied in part, and the John Doe Defendant is dismissed from this matter without prejudice.

**I.    BACKGROUND**

    In his complaint, Plaintiff raised numerous civil rights claims arising out of his interactions with Defendants Snowling and McClinton, both corrections officers at the prison in which he is confined, based on various interactions with him during his time in the prison. (*See* ECF No. 1.) Plaintiff's chief complaint arises out of events which occurred on March 17, 2016, shortly after 8 p.m. (Document 4 attached to ECF No. 70 at 32.) According to Plaintiff at his deposition, at approximately 8:25 p.m., and approximately fifteen minutes after another prisoner informed Plaintiff that Defendant Snowling had been watching him, Plaintiff's cell door was opened. (*Id.*)

Plaintiff contends that he had not expected a visit from the guards and did not know why they had come, but before he had a chance to fully turn around, Defendant Snowling splashed him with a considerable amount of scalding water from a seventy-two ounce thermal mug. (*Id.* at 32-36.) Plaintiff screamed and sought to remove his shirt to alleviate the pain, and then turn and came to the door and engaged in a brief argument with Snowling. (*Id.* at 33.) Plaintiff's neighbor warned him not to leave his cell, and as Plaintiff started to exit the cell to continue his argument with Snowling, he saw Defendant McClinton standing a foot away with a can of mace at the ready. (*Id.*) When Plaintiff retreated into his cell, the two officers retreated, and called another unknown officer to request that the cell door be closed. (*Id.* at 34-35.)

A few minutes later and after Plaintiff had returned to his cell, Snowling returned. (*Id.* at 35.) Plaintiff requested to be seen by medical personnel as he had suffered burns from the water, but Snowling refused his request and left. (*Id.*) According to Plaintiff, following the water attack, he had "welt marks" on his face, and "blisters and . . . red marks" on his shoulder, neck, and side. (*Id.* at 36-37.) These wounds gradually healed over the course of "a week[, m]aybe two," and left him with "small white marks" on his shoulders. (*Id.* at 37.) Plaintiff did not make any further requests for medical aid. (*Id.* at 38.) Approximately two years after the alleged assault, he filed a prison grievance concerning the hot water attack and denial of medical care, which he ultimately appealed to the administrator of the prison.[1] (Document 3 attached to ECF No. 73 at 14-15.)

Plaintiff also complains in this matter that Defendant Snowling subjected him to various threats, forms of sexual harassment, and invasions of privacy during the time that he was detained in the section of the prison in which Snowling worked. (*See* ECF No. 1 at 7-13.) Plaintiff,

---

[1] The full text of this grievance is presented below in the context of this Court's discussion of Defendants' exhaustion related arguments.

however, did not file a prison grievance specifically dealing with these incidents. (*See* Document 4 attached to ECF No. 70 at 52-169.)

## II. LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing

3

the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

### III. DISCUSSION

#### A. Exhaustion

Defendants first argue in their motion that Plaintiff's claims should be dismissed because they contend he failed to properly exhaust his claims through the proper administrative channels before filing suit in this Court. Pursuant to 42 U.S.C. § 1997e, before a prisoner may file a civil rights suit challenging "prison conditions," he is required to exhaust all available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84-85 (2006). Indeed, a prisoner is required to "exhaust administrative remedies even where the relief sought – [such as] monetary damages – cannot be granted by the administrative process." *Id.*; *see also Booth v. Churner*, 532 U.S. 731, 734 (2001). Where an administrative procedure is available, a plaintiff seeking to challenge prison conditions via a federal civil rights action must fully and properly exhaust his administrative remedies prior to filing suit, and exceptional circumstances will not excuse a plaintiff's failure to exhaust his claims. *Ross v. Blake*, --- U.S. ---, ---, 136 S. Ct. 1850, 1856-57 (2016). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Booth v. Churner*, 206 F.3d 289, 298 (3d Cir. 2000), *aff'd*, 532 U.S. 731 (2001).

In this matter, all of Plaintiff's claims concern incidents which occurred as part of Plaintiff's prison life, they are all subject to the exhaustion requirement of § 1997e. *Porter* 534 U.S. at 532. As Plaintiff has not argued that his administrative remedies were unavailable in this matter, his claims must therefore be dismissed unless he properly exhausted them. "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules

4

because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. To properly exhaust his claims, a prisoner must therefore seek all available administrative remedies and at least substantially comply with the applicable administrative rules and regulations imposed by the prison in which he is detained. *Id.* at 90-103; *Small v. Camden Cnty.*, 728 F.3d 265, 272 (3d Cir. 2013) (completion of the administrative review process requires "substantial" compliance with the prison's grievance procedures). To determine whether a prisoner has properly exhausted his claims, a court must therefore look to the administrative grievance regime of the prison facility in question to determine what steps are required to properly exhaust a claim and determine whether the plaintiff substantially complied with these steps. *See Jones v. Bock*, 549 U.S. 199, 218 (2007). Because exhaustion is a threshold issue affecting a plaintiff's entitlement to relief, it is the Court, and not a jury, that determines whether a plaintiff has properly exhausted his claims, including in those matters where the Court is required to resolve factual disputes. *Small*, 728 F.3d at 269-71.

As one Court in this district has explained,

> New Jersey's "Inmate Remedy System is a comprehensive system that includes the opportunity for an inmate to submit an 'Inmate Inquiry Form' or 'Inmate Grievance Form' and, in response to the resulting decision or finding, to submit an 'Administrative Appeal.'" N.J. Admin Code § 10A:1-4.4(c) (2018). Exhaustion of administrative remedies therefore requires that a prisoner both submit an inquiry or grievance form, and an administrative appeal of any adverse decision on the inquiry or grievance form. § 10A:1-4.4(d). These remedy forms "must be complete, legible, and include a clear and concise statement" of the prisoner's claim, and "shall contain the full name, [inmate] number and, when required, signature of the inmate submitting the form." § 10A:1-4.4(e). Upon the filing of an inquiry or grievance form, a prisoner will receive a response within fifteen or thirty days respectively as to the two types of forms, unless the coordinator of the prison's grievance system determines more time is needed, in which case the prisoner shall be informed of the need for more time. § 10A:1-4.4(i), 4.5(d). Upon receiving a final response to the form, [the prisoner] may file his administrative appeal, within ten calendar days, at which point he

5

will receive a final decision on his appeal within ten further calendar days. § 10A:1-4.6.

*Campbell v. Doe*, No. 12-2750, 2018 WL 4616068, at *3 (D.N.J. Sept. 26, 2018). Plaintiff's prison made use of this comprehensive system, either through paper or electronic means. (*See* Document 4 attached to ECF No. 70 at 44-50). To exhaust his claims, Plaintiff was therefore required to file an inmate grievance, submit that grievance, and file an appeal of any adverse determination within ten days of receiving an initial decision. (*Id.* at 50.)

In this matter, the parties appear to agree that Plaintiff only filed one grievance related to the events in question in this matter in January 2018.[2] In that grievance, Plaintiff complained as follows:

> In March of 2016[,] while housed on 3DD I was assaulted by officer [S]harlene Snowling who conspired with officer Marlen McClinton and another officer to ambush me in my cell by tossing boiling hot water on me retrieved from the unit pantry. The water [was] so hot that it caused blisters on my back[,] shoulders[,] and the side of my face. And in an attempt to con[c]eal the assault these officers tried to lore me out of my cell, to mace then ca[ll] a code to cover the actual events that occurred. And [Snowling] refused me medical treatment and other privileges like showers and kiosk to assure [I] was healed before allowing me out of my cell.
>
> I know these issues were brought to [the administrator's] attention and several others by . . . the attorney who represented me [] during this [incident]. We not only addressed the assault but also PREA issues relating to Officer Snowling[']s behavior. [The attorney] requested information relating to how these officers were pun[ished] or disciplined relating to the [assault]. . . .
>
> . . . And we never received [a] response [or] any answer. And no assurance that these officers are not in areas w[h]ere they

---

[2] While Plaintiff does contend that he took additional actions prior to the filing of this grievance through an attorney who previously represented him, in his response to the summary judgment motion he relies on the January 2018 grievance, and not these previous letters that did not pass through the inmate grievance system, to support his claim that he has exhausted his administrative remedies as to his claims. (*See* ECF No. 73 at 8-9). Although Plaintiff appears have delayed filing his actual grievance for almost two years, Defendants do not argue that the prison system in place in this matter had any specific requirement that he file sooner.

6

> can perpetrate these crimes on other inmates. I was removed from the unit 3DD and the same officers returned to the unit and continued the same behavior. I would also like to know if these issues [I] addressed were referred to [the] [M]ercer [C]ounty [Prosecutor[']s [O]ffice for a[n] impartial determination of facts as to the crime. And how these officers were disciplined and[/]or any administrative remedies you see fit. [T]hank you.

(Document 3 attached to ECF No. 73 at 14-15.)

Plaintiff initially received a response which indicated he should have his attorney seek this information. (*Id.*). When Plaintiff appealed, he both asked for the disciplinary information again and asked what other remedies were available to him from the prison. (*Id.*). The prison administrator responded to this appeal, and suggested that Plaintiff either take the issue up with the prison's special investigations division or have his attorney seek the information either from the prison via litigation or from the prosecutor. (*Id.*)

Defendants present two arguments as to why this grievance was insufficient to exhaust Plaintiff's claims. First, they argue that this grievance makes no mention of any of Plaintiff's claims regarding threats made by Defendants, or Snowling's alleged threats, harassment, or purported sexual harassment of Plaintiff, and thus does not exhaust those claims. Next they argue that Plaintiff's grievance should not be considered to exhaust his claims of excessive force arising out of the hot water incident or his medical claims regarding Snowling's refusal to provide him treatment as he did not ask the prison to remedy these alleged violations and instead "only" sought information regarding any discipline or charges against Snowling and McClinton and was not specific enough to provide the prison an opportunity to redress those claims prior to filing suit.

Turning to Defendant's first argument, this Court agrees that Plaintiff's sole relevant grievance form fails to adequately exhaust Plaintiff's claims regarding Defendant's apparently retaliatory threats or the various forms of invasion of privacy or sexual harassment he raises against Defendant Snowling. Although Plaintiff mentions "PREA" – the Prison Rape Elimination Act,

7

his grievance contains no non-vague allegations regarding Snowling's behavior and does not mention any invasion of privacy, sexual harassment, or threats from any of the named Defendants. The grievance mentions only two claims with any real specificity – Plaintiff's water related excessive force claim, and the resulting denial of medical treatment claim. Any and all other claims Plaintiff seeks to raise were not mentioned, and have therefore not been exhausted. Plaintiff's non-excessive force or medical claims must therefore be dismissed for lack of exhaustion.[3]

Defendants next contend that, even acknowledging that Plaintiff's grievance does adequately raise his excessive force and denial of medical care claims, this Court should still consider those claims unexhausted as Plaintiff "only" requested information and not affirmative action or sought relief from the prison, and thus did not provide an opportunity for the prison to remedy his claims. Defendants, however, provide no caselaw to support their assertion that an explicit request for some more concrete form of relief was required to exhaust Plaintiff's claims, or that Plaintiff was required to ask for a specific species of remedy in order to provide them an opportunity to address his claims. While § 1997e does require exhaustion of administrative remedies even where a plaintiff seeks only relief which cannot be obtained administratively, *see, e.g., Booth*, 532 U.S. at 736, the purpose of the exhaustion requirement is to provide the state

---

[3] Although Plaintiff's failure to exhaust his allegations of sexual harassment or misconduct is sufficient to require this Court to dismiss those claims, Defendants also argue that any claim premised on the Prison Rape Elimination Act must fail as a matter of law as the statute neither created a private right of action nor will support a § 1983 claim. Defendants are correct – as "nothing in the language of the [PREA] statute establishes a private right of action," *Walsh v. N.J. Dep't of Corr.*, No. 17-2442, 2017 WL 3835666, at *4 (D.N.J. Aug. 31, 2017), PREA will therefore neither provide a basis for a stand alone claim nor permit the "bootstrapping" of an alleged PREA violation into a § 1983 claim. *Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017). Thus, even had Plaintiff adequately exhausted his claim premised on a violation of PREA, any such claim would provide no basis for relief.

8

authorities an opportunity to address in an appropriate fashion alleged violations before a suit commences. *Woodford*, 548 U.S. at 93-94.

Given that the requirement applies even where the requested relief is unavailable, Supreme Court caselaw on point suggests that the form of relief requested by the plaintiff in his administrative grievances is of far less import than the *opportunity* for redress provided to the prison itself. *Woodford*, 548 U.S. at 93-94; *Booth*, 532 U.S. at 736. Thus, even if Defendants were correct that Plaintiff asked *only* for further information about what disciplinary steps were taken and whether the matter had been criminally referred, he would still have exhausted his excessive force and medical claims because his grievances raised both the hot water assault and the denial of treatment after that assault to the attention of the appropriate figures through the required procedural means and provided them an opportunity to address the issues. Defendants, of course, are not entirely correct in that assertion – as the quoted language above makes clear, both in his original grievance and in his appeal thereof, Plaintiff did *not* merely request information, he also requested "any administrative remedies [the prison] see[s] fit" to grant. (Document 3 attached to ECF No. 73 at 14-15.) As Plaintiff did request any available remedy based on the excessive force and medical claims he raises in this matter, Plaintiff properly exhausted those two claims, and those claims therefore survive Defendants' exhaustion argument.

**B. Defendants' merits arguments as to excessive force and the denial of medical care**

Defendants next argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment excessive force and denial of medical care claims. Turning first to Plaintiff's excessive force claim regarding the hot water incident, Defendants do not appear to argue that Plaintiff has failed to present a cognizable claim against Defendant Snowling, but instead argue that he has failed to provide sufficient evidence to support the contention that Defendant McClinton can be held responsible for Snowling's actions in throwing the water upon Plaintiff,

9

despite his presence and actions immediately following the event. Defendants therefore contend that McClinton is entitled to summary judgment as to the excessive force claims.

A defendant in a civil rights matter may only be held liable for an alleged violation of the plaintiff's constitutional rights where that defendant had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A defendant will be liable for the use of excessive force under the Eighth Amendment where the force in question was not "applied in a good faith effort to maintain or restore discipline" but rather was used "maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In making this determination, the Court considers the following factors: the need for an application of force, the relationship between that need and the amount of force used, the extent of the plaintiff's injuries, the extent of threat to others posed by the plaintiff at the time of the events, and any efforts the defendant may have made to temper or avoid the use of force. *Giles*, 571 F.3d at 326. A use of force "that exceeds that which is reasonable under the circumstances is actionable." *Id.* at 328. A corrections officer may likewise be held liable under the Eighth Amendment where he has a realistic ability to intervene and prevent the use of excessive force by another officer and fails to do so. *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 652 (3d Cir. 2002).

Considering the facts in the light most favorable to Plaintiff, as this Court must at summary judgment, it is clear that Defendants are not entitled to summary judgment as to Plaintiff's excessive force claim related to the hot water incident. Were a jury to find Plaintiff credible, his testimony would indicate that, without warning or cause, two officers, Defendants Snowling and McClinton, came to his cell while Snowling was carrying a large container of scalding water, they had Plaintiff's cell opened, and then, without warning or a word to Plaintiff, Snowling splashed

the water upon Plaintiff, scalding and burning him, all while McClinton stood just outside of Plaintiff's cell, mace in hand, awaiting any responsive actions on the part of Plaintiff. While it is true that Plaintiff has provided no testimony directly tying McClinton to the throwing of the water upon him, his testimony, if credited, would indicate that McClinton agreed to go to his cell, without apparent reason, and that he stood by while Snowling threw the water upon Plaintiff, prepared to spray Plaintiff with Mace if he chose to respond to the allegedly unprovoked assault. Plaintiff's testimony at his deposition, viewed in the light most favorable to him as the nonmoving party, is more than sufficient to show that McClinton had direct involvement in Snowling's actions as he walked with her with the hot water and apparently took no action to stop her from using it. Likewise, McClinton involved himself in the alleged incident by providing aid and cover for Snowling in the form of a prepared pepper spray canister should Plaintiff respond. As Plaintiff's testimony in turn indicates that there was no need to restore order at the time, a jury who found him credible could readily infer that the two officers acted with a sadistic or malicious intent to cause Plaintiff harm, and that the force used was excessive. There is therefore a genuine issue of material fact as to Defendants' liability to Plaintiff for excessive force arising out of the hot water incident, and Defendants' motion for summary judgment as to that claim is denied as to both Defendants Snowling and McClinton.

Defendants next argue that they are entitled to summary judgment as to Plaintiff's denial of medical care claims both because Plaintiff did not suffer a sufficiently serious injury sufficient to trigger Eighth Amendment protections and in turn because McClinton was not personally involved in Snowling's alleged denial of treatment. In order to make out a claim for a defendant's deliberate indifference to his medical needs in violation of the Eighth Amendment, a plaintiff must prove that he had a sufficiently serious medical need and that the defendants engaged in acts or omissions indicating that they were deliberately indifferent to that need. *Natale v. Camden Cnty.*

*Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). An act or omission will amount to deliberate indifference where it indicates that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An inmate's medical need will in turn be sufficiently serious to support an Eighth Amendment claim where the need "has been diagnosed as requiring treatment or is so obvious that a lay person would easily recognize the necessity of a doctor's attention." M*onmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). A defendant may also be held liable where that defendant had "knowledge of the need for medical care [and] . . . intentional[ly] refus[ed] to provide that care." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). In such an instance, the denial of medical care for non-medical reasons resulting in "undue suffering or the threat of tangible residual injury" will be sufficient to make out a claim for relief. *Id.* at 346-47.

Turning first to the sufficiency of Plaintiff's injuries, in this matter Plaintiff testified at his deposition that the scalding water caused him to suffer burns including welts and burn blisters which developed over a large swath of his body, resulting in pain to him, but which eventually faded into obscure discolorations of his skin. Defendants argue that these injuries cannot be so severe as to implicate the Eighth Amendment because, approximately two weeks after the hot water incident, Plaintiff underwent a medical evaluation during which a doctor conducting a cardiac and hypertension evaluation of Plaintiff noted "no rashes, lesions, or ulcerations." (*See* ECF No. 78 at 9.) When Plaintiff returned a few months later for another such evaluation, the doctor again noted no specific skin issues. (*Id.* at 4.) Defendants essentially argue that, had Plaintiff really suffered the burns that he claims to have received, there still would have been some sign of them during his chronic care evaluations in late March and early June 2016. Reviewing the facts in the light most favorable to Plaintiff, however, this Court must conclude that he has

12

presented a sufficiently serious medical need. Although Plaintiff's burns, welts, and blisters, may have faded by the time he had his medical review two weeks later, if a jury were to credit his testimony that he developed welts and bruises from the burns he suffered, then such a jury could clearly conclude that he suffered an obvious injury that a layperson could infer would warrant medical care. That those wounds were not discovered nearly two weeks after the burn does not defeat this conclusion – it is entirely possible that the burns had healed relatively quickly, and a jury which credited Plaintiff's claim of suffering burns could therefore conclude that he developed a painful condition which thereafter healed. The lack of discovery during an unrelated medical appointment two weeks after the fact may well control the weight to be given to Plaintiff's testimony, but that apparent fact does not, without more, amount to conclusive evidence that Plaintiff did not suffer sufficiently severe burns.

Turning to the question of deliberate indifference, it is clear that Plaintiff's testimony, read in the light most favorable to him, supports the conclusion that Snowling was deliberately indifferent to his needs. Plaintiff specifically testified that, shortly after the scalding water attack, he asked Snowling to take him to medical as he had suffered burns resulting from *her own* use of scalding water against him. Plaintiff's testimony thus indicates that Snowling knew that he had suffered burns and that he was in pain as a result, and refused to take him to see medical professionals because she had been the cause of those wounds. These are thus genuine issues of material fact that require this Court to deny Defendants' summary judgment motion to the extent they seek judgment on behalf of Snowling arising out of the denial of medical care.

Although Plaintiff's medical claim against Snowling will survive Defendants' motion for summary judgment, to the extent he sought to raise that claim against McClinton, McClinton is entitled to summary judgment. Throughout this matter, Plaintiff has premised his medical claim as arising out of being denied access to medical by Defendant Snowling when he told her of his

13

injuries upon her return to his unit after the water attack. While Plaintiff both alleged and testified that he directly communicated his need for treatment to Snowling and she refused him medical care after this specific and explicit request for treatment for his burns, Plaintiff testified at his deposition that he did not raise this request for care with other officers. He likewise provided no testimony indicating that McClinton was present at the time Snowling refused him treatment or was ever confronted with Plaintiff's injuries. Plaintiff has thus failed to provide any allegations, let alone evidence, that McClinton was directly involved in the denial of medical care, and McClinton is therefore entitled to summary judgment as to Plaintiff's medical claim.[4]

### C. The John Doe Officer Defendants

Finally, the Court notes that in his initial complaint in this matter, Plaintiff raised claims against John Doe Corrections Officer Defendants[5] in addition to Defendants Snowling and McClinton. At no time during the pendency of this matter did Plaintiff amend his complaint to name or serve an individual in place of any of the John Doe Defendants, nor has he presented the Court with any reason he could not have done so. Likewise, as this matter is approaching a potential trial, the time for amending and serving the complaint on an additional defendants has passed. The John Doe Defendants shall therefore be dismissed without prejudice. *See, e.g., Parker v. United States*, 197 F. App'x 171, 173 n. 1 (3d Cir. 2006); *Mutschler v. Corby*, No. 16-327, 2017 WL 3894681, at *2 (W.D. Pa. Sept. 6, 2017).

---

[4] In their motion for summary judgment, Defendants also argue that they are not "persons" amenable to suit to the extent Plaintiff sought damages against them in their "official capacities." As Plaintiff made it clear in both his complaint, (ECF No. 1 at 5), and brief in response to the summary judgment motion, (ECF No. 73 at 8), that he sought to raise claims against Defendants only in their individual capacities, the Court need not and does not address the propriety of any official capacity claims which are not a part of this matter.

[5] Although it appears Plaintiff only sought to plead claims against a single John Doe Defendant in his complaint in this matter, in the caption he referred to up to ten John Doe Defendants.

14

## IV. CONCLUSION

In conclusion, Defendants' motion for summary judgment (ECF No. 70) is granted in part and denied in part, and the John Doe Defendants are dismissed from this matter without prejudice. An order consistent with this Opinion will be entered.

                                                    /s/ Michael A. Shipp
                                                **MICHAEL A. SHIPP**
                                                **UNITED STATES DISTRICT JUDGE**